**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

HELEN M. PETRUCCI,

         Plaintiff,

v.                                    Case No. 6:24-cv-728-JRK

FRANK BISIGNANO,
Commissioner of Social Security,[1]

         Defendant.

---

## OPINION AND ORDER[2]

### I.   Status

Helen M. Petrucci ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of trauma, post-traumatic stress disorder, anxiety attacks, a hearing impairment, issues with her lower back and neck, and neuropathy in both arms. Transcript of Administrative Proceedings (Doc. No. 9; "Tr." or "administrative

---

[1]    Frank Bisignano was recently confirmed as the Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

transcript"), filed June 18, 2024, at 92, 109, 248.[3] Plaintiff protectively filed an application for DIB on February 6, 2018, alleging a disability onset date of March 15, 2013.[4] Tr. at 222-27. Later, the alleged onset date was amended to August 31, 2016. Tr. at 365-70; see Tr. at 1094. The application was denied initially, Tr. at 91-106, 107, 130, 131-33, and upon reconsideration, Tr. at 108-28, 129, 141-46, 147.

On July 22, 2019, an Administrative Law Judge ("ALJ") held a hearing, during which she heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 42-82. On November 12, 2019, the ALJ issued a decision finding Plaintiff not disabled through September 30, 2018, the date Plaintiff was last insured for DIB (the "DLI"). See Tr. at 24-34.

Thereafter, Plaintiff sought review of the decision by the Appeals Council and submitted additional medical evidence and a brief authored by her counsel. See Tr. at 2, 5-6 (Appeals Council exhibit list and orders), 13-19, 83-90 (medical evidence), 211-13 (request for review), 375-79 (brief). On November 23, 2020, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's decision the final decision of the Commissioner. On January

---

[3]    Adjudicative documents and medical evidence are sometimes duplicated in the administrative transcript. Citations herein are to only one appearance of each document—not duplicates.

[4]    Although actually completed on February 7, 2018, see Tr. at 222, the protective filing date for the DIB application is listed elsewhere in the administrative transcript as February 6, 2018, see, e.g., Tr. at 92, 109.

20, 2021, Plaintiff commenced an action in this Court under 42 U.S.C. § 405(g) by timely filing a Complaint, seeking judicial review of the Commissioner's final decision. Tr. at 1147-49. Thereafter, on unopposed motion by Defendant, Tr. at 1157-59, the Court on December 30, 2021 entered an Order reversing and remanding the matter for further administrative proceedings, 1160-61 (Report and Recommendation), 1162-63 (Order), 1164 (Judgment).

On remand, the Appeals Council on July 13, 2022 entered an Order remanding the case to an ALJ for further proceedings. Tr. at 1168-70. On November 7, 2022, the ALJ held a hearing,[5] during which she heard testimony from Plaintiff, who was represented by counsel, and a VE. See Tr. at 1071-1101. On April 19, 2023, the ALJ issued a Decision finding Plaintiff not disabled through the DLI. See Tr. at 1046-61.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted additional medical evidence and a brief authored by her counsel. See Tr. at 1030-31, 1034-35 (Appeals Council exhibit list and orders), 1103-20 (medical evidence), 1300-01 (request for exceptions), 1354-60 (brief). On February 28, 2024, the Appeals Council declined to assume jurisdiction, Tr. at 1030-33, making the ALJ's Decision the final decision of the Commissioner. On April 19, 2024, Plaintiff commenced this action under 42 U.S.C. § 405(g) by

---

[5] The hearing was held via telephone with Plaintiff's consent. Tr. at 1073-74, 1293-94.

timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff challenges "[w]hether the ALJ provided an adequate analysis of the supportability and consistency factors when evaluating the persuasiveness of the medical opinions of record and assessing Plaintiff's residual functional capacity" ("RFC"). Memorandum in Support of Plaintiff (Doc. No. 16; "Pl.'s Mem."), filed July 31, 2024, at 17. On October 7, 2024, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 22; "Def.'s Mem.") addressing the issue. Then, on October 21, 2024, Plaintiff's Memorandum of Law in Reply (Doc. No. 24; "Reply") was filed. After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant

---

[6]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

(1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 1049-61. At step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her amended alleged onset date of August 31, 2016, through her [DLI] of September 30, 2018." Tr. at 1049 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff through the DLI "had the following severe impairments: posttraumatic stress disorder (PTSD), depressive disorder, hearing loss, and degenerative disc disease." Tr. at 1049 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff through the DLI "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 1050 (emphasis and citation omitted).

The ALJ determined that Plaintiff had the following RFC through the DLI:

> [Plaintiff could] perform light work as defined in 20 CFR [§] 404.1567(b) except she was never able to climb ladders, ropes or scaffolds. She was able to frequently climb stairs and ramps, stoop, kneel, crouch and crawl. She was not limited with balancing. She could work at jobs where there is a moderate to low noise environment. She was able to understand and remember simple and some detailed instructions. She was able to perform simple tasks at jobs where she had no interaction with the public, occasional interactions with supervisors and coworkers and where there were no hourly quota production requirements. She would be able to adapt to routine changes at the workplace.

Tr. at 1052 (emphasis omitted).

At step four, the ALJ relied on the VE's hearing testimony and found that Plaintiff through the DLI "was unable to perform any past relevant work" as an "avionics technician" and an "aeronautic designer engineer." Tr. at 1059 (some emphasis omitted). The ALJ then proceeded to the fifth and final step of the sequential inquiry. After considering Plaintiff's age ("54 years old . . . on the [DLI]"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found through the DLI that "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed," such as "electronics worker," "plastics assembler," and "inspector and hand packer," Tr. at 1059-60 (some emphasis and citation omitted). The ALJ concluded Plaintiff "was not under a

disability . . . at any time from August 31, 2016, the alleged onset date, through September 30, 2018, the [DLI]." Tr. at 1061 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against

the Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Focusing exclusively on her mental impairments, Plaintiff argues the ALJ erred in assessing the medical opinion evidence, particularly opinions from non-examining state-agency psychologists James Brown, Ph.D. and Theodore Weber, Psy.D., treating psychiatrist Mira Sachdev, M.D., and treating psychologist Scott Fairchild, Psy.D. Pl.'s Mem. at 17-33; Reply at 1-7. Responding, Defendant contends the ALJ properly assessed the various opinions and provided rationale supported by substantial evidence. Def.'s Mem. at 6-18.

Dr. Brown reviewed available evidence in the administrative transcript dated through February 2018 and authored an opinion on May 24, 2018 indicating Plaintiff was "anxious" but "her mental status examinations are otherwise unremarkable." Tr. at 97, 96-99, 102-03. According to Dr. Brown, Plaintiff had "understanding and memory limitations," "sustained concentration and persistence limitations," "social interaction limitations," and "ability to adapt limitations" but that Plaintiff's "ADLs" (activities of daily living) affected the consistency of Plaintiff's statements about her symptom-related limitations. Tr. at 99 (some capitalization omitted). Dr. Brown stated

Plaintiff had moderate limitations in various mental functional areas but no more than that. Tr. at 102-03.

Dr. Weber reviewed available evidence dated through July 2018 and authored an opinion on August 29, 2018. Tr. at 115-17, 124-25. Overall, he concurred with Dr. Brown's opinion, noting that since that opinion had been authored, Plaintiff had been "more active." Tr. at 125.

On April 19, 2019, Dr. Sachdev authored an opinion in which she stated, among other things, that Plaintiff was "seriously limited" or unable to meet competitive standards" in most mental abilities about which she was asked. Tr. at 804-06 (some capitalization omitted). Asked to explain, she wrote "see medical record." Tr. at 805. According to Dr. Sachdev, Plaintiff could be expected to be absent from work more than four days per month as a result of her symptoms. Tr. at 805. Later, on January 24, 2020, Dr. Sachdev wrote a letter in which she indicated Plaintiff had been a patient in the mental health clinic since 2011 and in her care since October 2014; stated that Plaintiff's trauma symptoms are triggered by certain types of work (small rooms with one exit; workstations not against a wall); indicated Plaintiff cannot work productively if she does not feel safe and cannot maintain concentration for more than an hour or remember detailed instructions or consistently follow a schedule or maintain a normal workday; and stated Plaintiff has "striking" interpersonal impairments that could manifest in triggers from atypical

coworker interactions and results in her inability to interact appropriately with the general public. Tr. at 1810.

Dr. Fairchild first treated Plaintiff in December 2019, and he authored a comprehensive mental health evaluation on January 28, 2020 for the division of disability determinations in which he opined Plaintiff suffered from "overwhelming emotional symptoms in response to her PTSD[,] anxiety and depression." Tr. at 1816, 1811-16. On December 30, 2019, Dr. Fairchild also filled out the medical opinion form regarding mental abilities to do work and opined Plaintiff is "seriously limited," "unable to meet competitive standards," or has "no useful ability to function" in almost every mental abilities category. Tr. at 1807-09 (some capitalization omitted). According to Dr. Fairchild, Plaintiff would have "extreme difficulty in working anywhere, particularly around males." Tr. at 1808. Plaintiff could be expected to miss more than four days of work per month. Tr. at 1808. Dr. Fairchild reaffirmed this opinion on October 6, 2022. Tr. at 1817.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Under the new rules and Regulations, "A medical opinion is a statement from a medical source about

what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"). Particularly regarding the mental demands of work activities, "medical opinions are about" matters "such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[7] "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates [the United States Court of Appeals for the Eleventh Circuit's] prior

---

[7]      Plaintiff filed her application after the effective date of sections 404.1520c and 416.920c, so the undersigned applies the revised rules and Regulations.

precedents applying the treating-physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. 2022).

The following factors are relevant in an ALJ's consideration of a medical opinion or a prior administrative medical finding: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).[8]

---

[8] When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

Here, the ALJ found "persuasive" the opinions of Dr. Brown and Dr. Weber and found "not persuasive" the opinions of Dr. Sachdev and Dr. Fairchild. Tr. at 1055-57. Plaintiff contends the ALJ's rationale for making these findings is inadequate and unsupported. Pl.'s Mem. at 17-33. The undersigned disagrees.

In addressing the persuasiveness of Dr. Brown and Dr. Weber's opinions in the context of the overall evidence, the ALJ wrote:

> Dr. Brown and Dr. Weber's opinions are persuasive because they are specialists in the field of mental health who are well acquainted with the assessment of functionality as it pertains to the disability provisions of the Social Security Act and Regulations. Their opinions are also consistent with the progress notes and supported by the objective medical evidence. The undersigned however finds that [Plaintiff] could have no interaction with the public after considering [Plaintiff's] history of PTSD. Specifically, [Plaintiff] testified that her PTSD is triggered by anything out of the ordinary like someone walking through the door suddenly, noises at night, knocks on the door, and conversations where she is put on the spot. She also testified that she does not like to be around crowds because she startles easily. On mental status examinations, [Plaintiff] displayed an anxious mood, restricted affect, fleeting attention, and impaired insight and judgement, but she denied suicidal and homicidal ideations and her appearance, eye contact, speech, psychomotor level, memory, thought process, and behavior were within normal limits (Exhibits 1F, 3F, 5F, 6F, and 10F). Further, the record documents some improvement with treatment. For example, on February 6, 2018, [Plaintiff] reported that she has been in a good mood and in a good place the last few weeks (Exhibit 1F/20). On May 8, 2018, [Plaintiff] reported

> her mood has been "good" overall, she started volunteering by giving tours at a museum and has been enjoying that, and she just presented some middle school-aged kids with awards (Exhibit 3F/13). Additionally, [Plaintiff's] treating provider indic[a]ted on May 29, 2018 and September 27, 2018 that she continued to show improvement in mood and daily functioning (Exhibits 5F/69 and 6F/30).

Tr. at 1055-56. Next, regarding the persuasiveness of Dr. Fairchild's opinions as they relate to the rest of the evidence, the ALJ wrote:

> Dr. Fairchild's opinions (Exhibits 21F, 23F, and 24F) are not persuasive because at the time he provided his December 30, 2019 opinions (Exhibits 21F and 23F), he had no prior treatment history with [Plaintiff] (Exhibit 23F/1). Additionally, his opinions are inconsistent with the treatment records and not supported by the objective medical evidence. For example, although there were some findings of an anxious mood, restricted affect, fleeting attention, and impaired insight and judgement, [Plaintiff] denied suicidal and homicidal ideations and her appearance, eye contact, speech, psychomotor level, memory, thought process, and behavior were within normal limits (Exhibits 1F, 3F, 5F, 6F, and 10F). In addition, [Plaintiff] has not required repeated hospitalizations or emergency room treatment for symptoms related to a mental disorder during the period at issue. Further, the record documents some improvement with treatment.

Tr. at 1056. The ALJ then repeated examples of treatment improvement she had earlier provided when addressing Dr. Brown and Dr. Weber's opinions. Tr. at 1056-57. Finally, the ALJ addressed the persuasiveness of Dr. Sachdev's opinions in relation to the other evidence and found:

- 14 -

> Although Dr. Sachev is [Plaintiff's] treating psychiatrist at the Viera VA Outpatient Clinic, her opinions (Exhibits 7F and 22F) are not persuasive because they are inconsistent with her own progress notes and not supported by [Plaintiff's] activities of daily living. Specifically, on mental status examinations, [Plaintiff] displayed an anxious mood, restricted affect, fleeting attention, and impaired insight and judgement, but she denied suicidal and homicidal ideations and her appearance, eye contact, speech, psychomotor level, memory, thought process, and behavior were within normal limits (Exhibits 1F, 3F, 5F, 6F, and 10F). In addition, she bathed and dressed independently, did laundry, cleaned the house, vacuumed, ironed, prepared meals, drove a vehicle, shopped, and attended church (Exhibits 12E and 14E). She also gave tours at a museum and presented middle school-aged kids with awards (Exhibit 3F/13). Further, [Plaintiff] had been re-elected to the AIAA as secretary, she was taking religious/Bible classes online, and was looking for a job (Exhibits 5F/75 and 6F/71). [Plaintiff] also did not require repeated hospitalizations or emergency room treatment due to a mental impairment prior to the date last insured.

Tr. at 1057.

The ALJ's findings reflect adequate consideration of the required factors and are supported by substantial evidence. During the relevant time period, Dr. Sachdev prescribed Atomoxetine and Adderall for attention and concentration concerns and Clonadine at bedtime for sleeping and ADHD. See, e.g., Tr. at 412-17 (December 28, 2017 prescription notes and "stable mental status"), 674 (May 29, 2018 prescription notes). After Plaintiff's homelessness issue had been resolved, Plaintiff's mental health notes (Dr. Sachdev's included) indicate an

improvement in symptoms and good insight. <u>See, e.g.</u>, Tr. at 644-46 (July 19, 2018 social worker note indicating Plaintiff was volunteering in various positions, taking online religious courses, and looking for a job despite being labeled "unemployable"), 672-77 (Dr. Sachdev's May 29, 2018 note indicating Plaintiff was looking for a job but did "not expect this to happen," was working with the Veterans council, and had mild anxiety with either normal or poor concentration and otherwise benign findings), 565-66 (May 8, 2018 social worker note indicating Plaintiff was volunteering at a museum and was doing other community events; attention was "fleeting" but "redirectable"), 399-400 (February 8, 2018 note from social worker indicating Plaintiff appeared with a service dog, had applied to volunteer at a museum, had fair impulse control and euthymic mood but otherwise benign findings), 407-09 (January 9, 2018 note from social worker stating Plaintiff's concentration improved with increased Adderall); <u>see also</u> Tr. at 915-20 (Dr. Sachev's April 19, 2019 note (after the DLI of September 30, 2018) indicating relatively benign symptoms and stable mental status); <u>but see</u> Tr. at 655-59 (June 2018 aggravation of PTSD symptoms after inappropriate encounters with a handyman in her apartment complex and letter/recommendation by Dr. Sachdev that she move out). The ALJ also accurately summarized Plaintiff's activities of daily living. Tr. at 1055-57; <u>see</u> Tr. at 313-20, 338-44. As to Dr. Fairchild, the ALJ accurately noted he had just

began treating Plaintiff when he authored his opinions. Tr. at 1056; see Tr. at 1811.

This is not a case of an ALJ's failure to account for a fluctuation in symptoms or a failure to identify genuine inconsistency between a treating physician's opinion and her notes, as Plaintiff contends. See Pl.'s Mem. at 24 (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1260-64, 1267-68 (11th Cir. 2019)). Nor is it an ALJ's failure, as Plaintiff argues, to take into account "the fundamental differences between the relaxed, controlled setting of a medical clinic and the more stressful environment of a workplace." Pl.'s Mem. at 28 (quoting Simon v. Comm'r of Soc. Sec., 7 F.4th 1094, 1107 (11th Cir. 2021)). Rather, the ALJ's Decision reflects consideration of the evidence on the whole and specifically cites evidence both within and outside of the treatment notes that is contradictory to the work-preclusive opinions of Dr. Fairchild and Dr. Sachdev.

Plaintiff also contends the ALJ should not have relied on the opinions of Dr. Brown and Dr. Weber because they did not review all of the evidence (they could not have based upon the timing of their opinions). See Pl.'s Mem. at 22. The relevant time period under consideration by the ALJ, however, only extended months after these opinions were authored, during which time Plaintiff showed even more improvement in her mental symptoms. Moreover, although finding "persuasive" the opinions of Dr. Brown and Dr. Weber, the

ALJ actually added more restrictions to Plaintiff's RFC (no interaction with the public) after finding credible Plaintiff's allegations in this regard. Tr. at 1052, 1055. The ALJ did not err in regard to her partial reliance on Dr. Brown and Dr. Weber.

## V.   Conclusion

The ALJ's Decision is supported by substantial evidence. Based on the foregoing, it is

**ORDERED:**

1.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2.     The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on August 27, 2025.

_James R. Klindt_
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record